Appeal No. 2022-1599

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

ALEXSAM, INC.,
*Plaintiff-Appellant*,

v.

CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and CIGNA HEALTHCARE OF TEXAS, INC.,
*Defendants-Appellees.*

Appeal from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00081-RWS-RDP, Judge Robert W. Schroeder III

# RESPONSE BRIEF OF DEFENDANTS-APPELLEES CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and CIGNA HEALTHCARE OF TEXAS, INC.

Ricardo J. Bonilla
Neil J. McNabnay
Bret T. Winterle
Lance E. Wyatt, Jr.
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com
mcnabnay@fr.com
winterle@fr.com
wyatt@fr.com

*Counsel for Defendants-Appellees*

Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare of Texas, Inc.

November 21, 2022

**Patent Claims at Issue**
**Fed. Cir. R. 28(a)(12)**

U.S. Pat. No. 6,000,608

32. A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.

33. The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1599

**Short Case Caption** Alexsam, Inc. v Cigna Corporation

**Filing Party/Entity** Appellees Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare of Texas, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/21/2022

Signature: /s/ Ricardo J. Bonilla

Name: Ricardo J. Bonilla

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Cigna Corporation | | N/A |
| Cigna Health and Life Insurance Company | | Connecticut General Corporation; Cigna Holdings, Inc.; Cigna Holding Company; Cigna Corporation |
| Connecticut General Life Insurance Company | | Connecticut General Corporation; Cigna Holdings, Inc.; Cigna Holding Company; Cigna Corporation |
| Cigna Healthcare of Texas, Inc. | | Connecticut General Corporation; Cigna Holdings, Inc.; Cigna Holding Company; Cigna Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Fish & Richardson P.C. | Ricardo J. Bonilla | Neil J. McNabnay |
| David B. Conrad | Lance E. Wyatt | Bret Winterle |
| Sarika Patel | Tommy Jacks | Veena Tripathi |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Alexsam, Inc. v. Simon Property Group (Texas), L.P. - No. 22-1598 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........ 1

STATEMENT OF THE ISSUES ........ 2

PRELIMINARY STATEMENT ........ 2

STATEMENT OF THE CASE ........ 4

I. The Parties ........ 4

II. The '608 Patent ........ 5

III. Procedural History ........ 7

A. Prior Appeals ........ 7

B. AlexSam's Allegations Against Cigna ........ 10

1. AlexSam's Complaint ........ 10

2. AlexSam's Infringement Contentions ........ 11

3. Claim Construction ........ 13

4. AlexSam's Expert Report ........ 14

5. AlexSam's Summary Judgment Opposition ........ 16

C. The Lower Courts' Orders ........ 20

SUMMARY OF THE ARGUMENT ........ 24

ARGUMENT ........ 26

I. Standard of Review ........ 26

II. Much of AlexSam's argument is new and therefore waived. ........ 27

III. The district court properly applied the agreed-upon construction in this case ........ 30

A. AlexSam itself proposed the construction it now complains of, one adopted by several courts post-*Datastream*. .................. 31

B. The lower court properly applied the construction. .................... 35

IV. AlexSam has no evidence of infringement. ..................................... 37

V. Conclusion and Relief Sought ........................................................ 44

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AlexSam, Inc. v. Aetna Inc.*,
No. 3:19-cv-01025 (D. Conn.) .......... 4

*AlexSam, Inc. v. Amer. Exp. Travel Related Servs. Co. Inc.*,
No. 1:21-cv-8116 (S.D.N.Y.) .......... 4

*AlexSam, Inc. v. Best Buy Co., Inc.*,
No. 2:10-cv-00093, Dkt. No. 180 (E.D. Tex. Apr. 9, 2012) .......... 33, 34

*AlexSam, Inc. v. Cigna Corp. et al.*,
No. 2:20-cv-00081 (E.D. Tex.) .......... 4

*AlexSam, Inc. v. Gap, Inc.*,
621 F. App'x 983 (Fed. Cir. 2015) .......... 4

*AlexSam, Inc. v. HealthEquity, Inc., et al.*,
No. 2:19-cv-00445 (D. Utah) .......... 4

*AlexSam, Inc. v. Humana, Inc.*,
No. 2:07-cv-288, 2009 WL 2843333 (E.D. Tex. Aug. 28, 2009) .......... 11, 33

*AlexSam, Inc. v. IDT Corp.*,
715 F.3d 1336 (Fed. Cir. 2013) .......... *passim*

*AlexSam, Inc. v. Mastercard It'l Inc.*,
No. 15-cv-02799 (E.D.N.Y.) .......... 4

*AlexSam, Inc. v. Simon Property Group (Texas), L.P.*,
No. 2:19-cv-00331 (E.D. Tex.) .......... 4

*AlexSam, Inc. v. US Bank N.A.*,
No. 1:21-cv-588 (S.D. Ohio) .......... 5

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002) .......... 29

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
723 F.3d 1376 (Fed. Cir. 2013) .......... 27

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
103 F.3d 978 (Fed. Cir. 1997) .......... 26, 27

*Intell. Ventures II LLC v. BITCO*,
No. 6:18-CV-00298-JRG, 2019 WL 999902 (E.D. Tex. Feb. 28, 2019) . 28

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .......... 32

*MyMail, Ltd. v. America Online, Inc.*,
476 F.3d 1372 (Fed. Cir. 2007) .......... 27

*Patel v. Texas Tech Univ.*,
941 F.3d 743 (5th Cir. 2019) .......... 27

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) .......... 41

*Trading Techs. Intern., Inc. v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010) .......... 26

**Other Authorities**

FED. R. CIV. P. 56(c) .......... 26

## STATEMENT OF RELATED CASES

No other appeal in or from this action was previously before this or any other appellate court. The following other cases may be affected by this Court's decision:

- *AlexSam, Inc. v. Mastercard International Inc.*, Case No. 1:15-cv-02799 (Eastern District of New York);
- *AlexSam, Inc. v. Aetna, Inc.*, Case No. 3:19-cv-01025 (District of Connecticut);
- *AlexSam, Inc. v. Simon Property Group, et al.*, Case No. 2:19-cv-00331 (Eastern District of Texas);
- *AlexSam, Inc. v. Cigna Corporation et al.*, Case No. 2:20-cv-0081 (Eastern District of Texas);
- *AlexSam, Inc. v. U.S. Bank, Inc.*, Case No. 1:21-cv-00588 (Southern District of Ohio);
- *AlexSam, Inc. v. American Express Travel Related Services Company, Inc.*, Case No. 1:21-cv-08116 (Southern District of New York); and
- *AlexSam, Inc. v. HealthEquity, Inc., et al.*, Case No. 2:19-cv-00445 (District of Utah).

## STATEMENT OF THE ISSUES

1. AlexSam proposed, and the lower court adopted, a construction of "unmodified existing standard point-of-sale device" that is consistent with the construction previously addressed by this Court and adopted by the lower court in several prior cases filed by AlexSam. AlexSam now argues that the construction is correct, but the lower court's application thereof was incorrect, even though the lower court was following this Court's guidance in its application. Should the Court therefore affirm the lower court's application of the construction?

2. This Court previously held that for AlexSam to establish that an accused system met the "unmodified existing standard point-of-sale device" limitation present in the asserted claims, AlexSam must establish that any accused system indeed included the use of a POS device "of the type in use as of July 10, 1997," and that such a POS device was "unmodified." AlexSam's evidence in this case to oppose summary judgment of non-infringement is only that the accused Cigna debit cards **could have been used** with "unmodified existing standard [POS] devices." Should the Court therefore affirm the lower court's grant of summary judgment of non-infringement?

## PRELIMINARY STATEMENT

Federal Circuit decisions have consequences, and AlexSam will apparently say anything to avoid those consequences. AlexSam asserts two patent

claims of the expired '608 Patent against Cigna's Visa-branded debit cards. These two system claims require the use of an "unmodified existing standard point-of-sale [POS] device." That is, under the construction applied by the lower court (and previously addressed by this Court in similar form), AlexSam can only prove infringement if it proves that what it accuses of infringement involved the use of POS devices that were, in fact, unmodified during relevant transactions. If the POS devices were modified, there could be no infringement.

AlexSam's theory of infringement of this expired patent has already been rejected by this Court. Nine years ago, in *AlexSam, Inc. v. IDT Corp.*, the Federal Circuit held that for AlexSam to establish that an infringing "system" met the limitation of "unmodified existing standard retail point-of-sale device," AlexSam had to supply evidence establishing that the accused products were used at point-of-sale devices that were in fact unmodified, as required by the claim construction of the lower court. AlexSam did not do so in that case, relying instead on a theory that infringement was somehow established because the accused products "could be" used at unmodified POS devices, they "did not require" modified POS devices, and the POS devices communicated via "standardized" messaging.

In that case, this Court held AlexSam's evidence insufficient to establish infringement, and it reversed the lower court's order, which had denied judgment as a matter of law in favor of the defendants. Here, AlexSam pursued this same impermissible theory with asserted claims that all include limitations reciting the almost identical "unmodified existing standard point-of-sale device," and it should receive the same treatment from this Court: a holding of non-infringement.

## STATEMENT OF THE CASE

### I. The Parties

AlexSam has asserted the '608 Patent in litigation nearly three dozen times since 2007, and it has been the subject of multiple appeals to this Court.[1] Currently, including this Cigna case, AlexSam and the '608 Patent are involved in seven cases pending in five different federal jurisdictions in Utah, Ohio, Texas, New York, and Connecticut.[2] Six of the seven cases—all but the

---

[1] *See AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013); *AlexSam, Inc. v. Gap, Inc.*, 621 F. App'x 983 (Fed. Cir. 2015). Several claims of the '608 Patent were invalidated as a result of this Court's decision in *AlexSam, Inc. v. Gap, Inc.*

[2] *See AlexSam, Inc. v. HealthEquity, Inc., et al.*, No. 2:19-cv-00445 (D. Utah); *AlexSam, Inc. v. Aetna Inc.*, No. 3:19-cv-01025 (D. Conn.); *AlexSam, Inc. v. Simon Property Group (Texas), L.P.*, No. 2:19-cv-00331 (E.D. Tex.); *AlexSam, Inc. v. Cigna Corp. et al.*, No. 2:20-cv-00081 (E.D. Tex.); *AlexSam, Inc. v. Mastercard It'l Inc.*, No. 15-cv-02799 (E.D.N.Y.); *AlexSam, Inc. v.*

case against Mastercard that is currently pending (on appeal) in New York—involve allegations that the defendants infringe claims of the ’608 Patent.

The Cigna defendants/appellees are four[3] companies operating in the health services industry. Appx1914-1915. Cigna Corp. is a global health services company headquartered in Connecticut, and the other three defendants/appellees are subsidiaries of Cigna Corp. (*See id.*) Cigna Corp.’s mission is to improve the health, well-being, and peace of mind of those Cigna serves by making health care simple, affordable, and predictable.[4]

## II. The ’608 Patent

The ’608 Patent, entitled “Multifunction Card System,” was filed on July 10, 1997, and issued on December 14, 1999. Appx0007. It expired on July 10, 2017. It “relates generally to debit card systems, both bank-issued and non-bank-issued, and more particularly to a multifunction card system that can be accessed by a variety of standard point-of-sale devices, by phone, by fax, or over the Internet.” Appx0010 at 1:4-8. According to the patent,

---

*Amer. Exp. Travel Related Servs. Co. Inc.*, No. 1:21-cv-8116 (S.D.N.Y.); *AlexSam, Inc. v. US Bank N.A.*, No. 1:21-cv-588 (S.D. Ohio).

[3] Defendants/Appellees refer to themselves collectively as “Cigna” throughout this brief.

[4] *See* https://www.cigna.com/about-us/.

prior art debit card systems were "extremely useful and provide[d] convenience for bank depositors, [but] they generally [did] not serve a plurality of functions." *Id.* at 1:24-26. Accordingly, there was "a need in the art for a debit/credit card capable of performing a plurality of functions, such as an electronic gift certificate card, a prepaid phone card, and a loyalty card, all in a real-time secure environment." *Id.* at 1:26-30.

The patentee purported to fill this need by inventing "a card system which can serve a number of functions, thus allowing the consumer to have one card which may act as their card for financial transactions, long-distance telephone calls, loyalty information, and medical information." Appx0011 at 3:2-6. The claims at issue here, claims 32 and 33, are specifically directed to a card system that would allow a user to use one card to access one database when the card is used as a debit card or to access another database when used as a medical card. *See* Appx0017 at cl. 32, 33. The system includes the card, a transaction processor, and a processing hub, all used to allow an "unmodified existing standard point-of-sale device" to process the card according to its intended function at the point of processing. That is, a system permitting one card to perform as either a debit card or a medical card, and do so at any POS device, without having to modify that POS device to process either function of the card.

## III. Procedural History

### A. Prior Appeals

As noted above, AlexSam and its asserted patents have been the subject of several appeals to this Court. *See supra* at p. 4 n1. Of particular relevance on this appeal is this Court's opinion in *AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013) (hereinafter, "*IDT*"). In that case, this Court addressed the evidence necessary for AlexSam to establish infringement of the "system" claim limitation "unmodified existing standard retail [POS] device," a term almost identical to that in asserted claims 32 and 33 in this case.[5] One of the issues raised on appeal in *IDT* was, similar to the issue raised here, whether "the district court erred in denying its motion for judgment of noninfringement with regard to the Walgreens and EWI systems because Alexsam failed to present substantial evidence that the Walgreens and EWI systems included 'an unmodified existing standard retail POS device.'" *IDT*, 715 F.3d at 1341.

At the *IDT* trial, AlexSam presented two alleged expert witnesses who testified on the "unmodified" nature of the POS terminals at issue. The Federal Circuit addressed the unpersuasive testimony of AlexSam's witnesses

[5] Claims 32 and 33 do not include the word "retail."

when discussing the deficiencies in AlexSam's evidence related to the "unmodified" limitation:

> Alexsam's main witness on infringement was Robert Baker, an expert on payment systems. Baker testified on two occasions, without elaboration, that the terminals used in IDT's card activations were "unmodified." When asked by Alexsam's counsel to elaborate, Baker testified that "Walgreens' terminals are similar to or the same as terminals in use in July of 1997" with regard to their "basic functions"; that the terminals "are the same as terminals that existed in July of 1997 from the standpoint that they are able to read a standard ... card"; and that "no modification was *required*" because IDT's system "*requires* the same capabilities as reading a standard credit card or debit card." He also testified that the terminals used to activate IDT's phone cards are "the same as terminals that existed in July of '97 with respect to the ability to read a magnetic stripe and send that information on to the next step without any modifications made to that terminal in that respect."
>
> At no point did Baker testify, except in the cursory manner described above, that no modifications were actually made to the terminals' software in order to allow them to activate IDT's cards. Indeed, Baker admitted on cross-examination that his testimony was limited to what was "required" in order to activate an IDT card, and that he had not expressed an opinion as to whether the actual POS terminals used in the IDT systems had been "reprogrammed, customized, or otherwise altered" in any way. He further testified that he had not spoken with IDT's retail or intermediary partners or with POS suppliers about the terminals used in IDT's systems. Finally, when pressed further, he admitted that he was "not an expert on terminals."
>
> Alexsam's other witness, Brent Hranicky, testified that no modifications were "necessary" to allow a standard POS terminal to read an IDT card, and that terminals in use in 1997 could perform "the same basic functions for use in a card system that are performed by POS devices today." On cross-examination, however, Hranicky admitted that he was not an expert on the "specific fea-

> ture functionality of the various terminals." Hranicky also admitted that POS terminals can receive software updates, but stated that he is not an expert on these updates, and that he did not "know for sure whether modifications have, in fact, been made for any reason to" the terminals.

*Id.* at 1341–42 (internal citations omitted).

This Court then held that "[i]n order to carry its burden of proof on infringement . . . under the parties' stipulated claim construction, Alexsam needed to prove both that these systems made use of terminals 'of the type in use as of July 10, 1997,' and also that those terminals 'ha[d] not been *reprogrammed, customized, or otherwise altered with respect to [their] software* . . . for use in the card system.'" *Id.* at 1341.

The Court concluded, "Alexsam failed to present substantial evidence that the terminals used in IDT's Walgreens and EWI systems 'ha[d] not been reprogrammed, customized, or otherwise altered with respect to [their] software . . . for use in the card system.' The district court had therefore erred in denying IDT's motion for JMOL of noninfringement as to the Walgreens and EWI systems." *Id.* at 1342 (internal citations omitted). The Federal Circuit thus reversed the lower court's denial of the defendants' motion for judgment as a matter of law of non-infringement based on AlexSam's failure to proffer substantial evidence supporting its theory that the defendants met this limitation. *See id.*

### B. AlexSam's Allegations Against Cigna

Given this Court's opinion in *IDT*, AlexSam was well aware of the type of evidence it would need to marshal to establish infringement of the "unmodified" limitations in its patent's claims. In fact, AlexSam referenced its prior cases multiple times throughout the lower court proceedings, and it reiterated the construction of the "unmodified" term on several different occasions, yet, in this case, it still failed to proffer any evidence sufficient to establish infringement of that limitation under the term's construction and this Court's guidance.

#### 1. <u>AlexSam's Complaint</u>

Nearly three years after the '608 Patent expired, AlexSam filed its Complaint against Cigna on March 18, 2020, asserting claims 32 and 33 of the '608 Patent against the debit cards that Cigna offered to some of its customers with Cigna Consumer-Driven Health Plans. Appx1798-1908 at ¶ 1. AlexSam explained that the "primary innovative feature offered by the '608 Patent was to introduce a Processing Hub that . . . allows . . . specialized features to be performed on an **existing unmodified POS device** . . . ." Appx1852 at ¶ 31 (emphasis added).

In addition to explaining the allegedly novel features of the '608 Patent's claims, AlexSam also relied on prior claim construction orders to interpret the terms in those claims. For example, when discussing the claimed

"processing hub," AlexSam relied on the Eastern District of Texas's 15-year-old *Datastream* opinion: "In a prior case, the term 'Processing Hub' has been construed to mean 'a computer which provides front-end POS device management and message processing for card authorizations and activations." Appx1858 at ¶ 53 (citing *AlexSam, Inc. v. Datastream Card Services Ltd., et al.*, Case No. 2:03-cv-00337-TJW, 2005 WL 6220095, at *10 (E.D. Tex. June 10, 2005) (hereinafter, "*Datastream*").) This reliance on prior constructions would become a pattern.

2. AlexSam's Infringement Contentions

Throughout the case, AlexSam continued to rely on (and to show its intimate knowledge of) prior claim constructions affecting its allegations. In its infringement contentions, AlexSam cited to two prior Eastern District of Texas claim construction orders when discussing its claims' limitations: *Datastream*, and *AlexSam, Inc. v. Humana, Inc.*, No. 2:07-cv-288, 2009 WL 2843333 (E.D. Tex. Aug. 28, 2009) (hereinafter, "*Humana*"). *See* Appx1311. With respect to the "unmodified" term, AlexSam explained, "The *Humana* court adopted the following construction for the phrase 'unmodified existing standard point-of-sale device' in the present claim: 'a terminal for making purchases of the type in use as of July 10, 1997, that has not been reprogrammed, customized, or otherwise altered with respect to its software or

hardware for use in the card system.'" Appx1320. This construction was the same construction applied by this Court in its *IDT* opinion twelve years before AlexSam filed this lawsuit against Cigna.

AlexSam then attempted to apply that construction to its infringement theory against Cigna. It alleged that Cigna infringed because "[o]n information and belief, any point of sale terminal that accepts Visa cards is able to read and accept all Visa branded cards, such as the Cigna Visa Cards." Appx1320. AlexSam continued, "Upon information and belief, the POS devices have not been altered for use in the Cigna card system." Appx1320.

AlexSam offered nothing more to support its infringement theory on this limitation, such as any proof or even allegation that the accused Cigna products were indeed used at "unmodified existing standard point-of-sale devices" before the '608 Patent's expiration. That is, like it failed to do in the *IDT* case, AlexSam did not offer anything to suggest the accused Cigna products "**both** . . . made use of terminals 'of the type in use as of July 10, 1997,' **and** also that those terminals 'ha[d] not been *reprogrammed, customized, or otherwise altered with respect to [their] software* . . . for use in the card system.'" *IDT*, 715 F.3d at 1341 (bold emphasis added).

3. Claim Construction

AlexSam continued to rely on the prior constructions of the "unmodified" term as the case progressed. At the outset of claim construction, AlexSam proposed the term "unmodified existing standard retail point-of-sale device" for construction. Appx2187. At that time, it noted the term had been previously construed in other cases, including *Humana* and *Datastream*, and it contended "that the constructions of those Prior Terms should be adopted here." Appx2187. Consistent with that suggestion, AlexSam proposed construing "unmodified existing standard point-of-sale device" as "a terminal for making purchases of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." Appx2197. Again, this was the same construction applied by this Court in *IDT*. *IDT*, 715 F.3d at 1341.

Because the parties had a minor (and ultimately immaterial) dispute regarding the proposed constructions, briefing was necessary on the "unmodified" term. In its opening brief, AlexSam once again reiterated the prior constructions of the term, including *Datastream*'s: "The phrase 'unmodified existing standard point-of-sale device' has been consistently construed by many courts, including this Court, since June 10, 2005 in the *Datastream*

case. **AlexSam proposes that this same construction again be applied in this case** as there is no reason to make changes or qualifications." Appx0598 (emphasis added). AlexSam doubled down again in its reply brief, stating, "AlexSam requests that the Court not make any changes to this **long-standing, prior construction, which aligns completely with controlling authority**." Appx0823 (emphasis added).

Shortly before the *Markman* hearing, the lower court provided a preliminary construction for the term: "a terminal, for making purchases, that is of the type in use as of July 10, 1997, and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." Appx0080. Other than adding commas to clarify that the phrase "of the type" modifies "terminal" and not "purchases," the preliminary construction is identical to the prior constructions of the term applied by both the Eastern District of Texas and this Court in *IDT*. The parties agreed to this construction, and the lower court adopted it. *See id.*

4. AlexSam's Expert Report

Now armed with virtually the same claim construction addressed by this Court in *IDT*, AlexSam set about proffering evidence for its infringement claims. It relied almost exclusively on its purported technical expert, Ivan Zatkovich, to try to establish Cigna's infringement. Mr. Zatkovich opined that

the accused Cigna debit card products met the "unmodified existing standard [POS] device" limitation because they were "designed such that any related card data or card functions **can be performed** on an unmodified standard retail POS device." (Appx2059-2060 ¶ 131 (emphasis added).) Neither he nor AlexSam, however, offered any proof that the accused Cigna debit cards were actually used at "unmodified existing standard POS devices" "of the type in use as of July 10, 1997," during the relevant period, nor any proof of how often such POS devices were used.

In fact, when asked if he had any proof that the accused products were actually used at "unmodified existing standard POS devices," Mr. Zatkovich conceded he did not:

> Q. That they're intended to be used at standard retail point-of-sale devices perhaps, but do you have any evidence that they actually, in fact, were used at unmodified point-of-sale devices during the relevant time frame?
>
> A. **Do I have proof if any** of the thousands of cards and the hundreds of thousands of transactions that occurred **actually occurred at an unmodified standard retail point-of-sale device? No**, I have no personal knowledge of that.

Appx1776 (emphasis added). This Court's *IDT* opinion made clear years earlier the exact type of evidence AlexSam would need to prove infringement of this key limitation, yet AlexSam proffered no such evidence.

5. <u>AlexSam's Summary Judgment Opposition</u>

Cigna therefore filed a motion for summary judgment of non-infringement because, *inter alia*, AlexSam had failed to put forward the evidence it knew was required to establish infringement.[6] AlexSam's opposition was shocking: **it contended that this Court was wrong** and the district court should therefore depart from binding precedent.[7] *See* Appx0943. AlexSam argued the lower court should ignore this Court's opinion in *IDT* because "the panel in that case . . . made the same oversight as [Cigna's] expert [and] overlooked the phrase 'for use in the card system . . . .'" Appx0943. In short, AlexSam contended "the court in *IDT* and [Cigna] fail [*sic*] to properly apply the Court's construction for the 'unmodified existing standard [POS] device' limitation, in particular the 'for use in the card system' portion of the construction." Appx0990; *see also* Appx0991 ("So, **the court in *IDT* erred** by ruling that the POS devices cannot be modified in any way as opposed to the plain language of the construction that merely requires any such modifications to be restricted to modifications 'for use in the card system.'") (emphasis added).

[6] AlexSam filed a competing motion for summary judgment of infringement. Appx0878-0916.

[7] AlexSam concedes it made this argument and now calls the decision to do so "a mistake" and "regrettable." *See* Blue Br. at 18, n.9.

At the hearing on the parties' competing summary judgment motions on infringement, AlexSam appeared to back away from its suggestions that *IDT* was incorrectly decided, though its counsel also continued to suggest there was "something" wrong with *IDT*, even if he could not articulate what it was. This left the magistrate judge, Judge Payne, understandably confused as to what AlexSam was actually arguing, as evidenced by the following excerpt from the hearing:

| | |
|---|---|
| THE COURT: | You are contending that the Federal Circuit was in error? |
| MR. RITCHESON: | I am not, Your Honor. |
| THE COURT: | Your briefing does. |
| MR. RITCHESON: | I would have written a different brief. But the point of that is not to suggest that there was any mistake; only that the application of the *IDT* decision is a significant question, as we've indicated, both because of the difference in claims, the difference in systems--that is, one of them that was required to use this specialized data and somehow get it downstream and, of course, because of the different evidence. So I would not go so far as using that argument today. |
| THE COURT: | I'm at a loss to understand why you would contend that you have the evidence to satisfy the test that the Federal Circuit set out for this patent in the *IDT* case and at the same time repeatedly argue that the Federal Circuit erred in doing so. |

MR. RITCHESON: Your Honor, I think that there is a reasonable and good faith argument to suggest that there were certain elements of the analysis by the CAFC that were either incomplete or not properly presented to them.

Appx0375-0376. AlexSam first argued in its briefing that the Federal Circuit got it wrong, then argued at the hearing that it should "have written a different brief," and then suggested the Federal Circuit's analysis was "incomplete." *See id.*

Regardless, the magistrate judge focused on the dispositive issue at play: what evidence did AlexSam have to show, as the claims and *IDT* required, that the accused Cigna products were used at point-of-sale devices that "had not been reprogrammed, customized, or otherwise altered with respect to their software for use in the card system"? *See* Appx0362-0364. The answer was "none," despite Judge Payne giving AlexSam multiple opportunities to point him to any such evidence in the record. *See* Appx0364 ("THE COURT: So I'm still waiting for you to point me to where Mr. Zatkovich says that Holmes' testimony means that it meets this limitation."); Appx0372; Appx0373; Appx0374. Toward the end of the hearing, Judge Payne gave AlexSam one more opportunity to point to any evidence in the record supporting meeting the relevant limitation, and AlexSam pointed to two pages

from the deposition transcript of Derek Holmes, the corporate witness for Alegeus, Cigna's third-party processor for its accused products:

> THE COURT: All right. Mr. Ritcheson, let me ask you a question. If the Court determines that the *IDT* opinion does govern despite the differences between claim 57 and claim 32, what is the best evidence that you can offer to show that no modifications were actually made to the terminals' software in order to allow the processing?
>
> MR. RITCHESON: Your Honor, as I stand here today with the record only slightly in my head, I would refer you again to the critical testimony from Mr. Holmes at his pages 179 and 180 where he takes a -- he gives us the evidence that was missing from *IDT*.

Appx0382-0383. The only relevant testimony provided by Mr. Holmes in those two pages is his statement that the Alegeus system receives transaction authorization data via "a standard debit card transaction. It's an ISO message that is required by the networks, so not unique to Alegeus in that sense." Appx2247. AlexSam relied on this testimony to contend it had somehow met its burden to establish the "unmodified" claim limitation.

### C. The Lower Courts' Orders

The magistrate judge disagreed. Approximately three weeks after the hearing, on September 21, 2022, Judge Payne issued a Report and Recommendation ("R&R") to grant Cigna's motion for summary judgment of non-infringement and deny AlexSam's motion for summary judgment of infringement. *See generally* Appx0101-0114. Judge Payne's opinion focused on "whether Alexsam has offered sufficient evidence to create an issue of genuine fact as to whether the accused system uses 'unmodified existing standard point-of-sale [POS] device[s]." Appx0105. He first discussed the proper construction of the "unmodified" term and then addressed AlexSam's purported evidence in support of that limitation.

Judge Payne recognized that the "unmodified" term had been construed in the Eastern District of Texas before and always with a similar construction. *See* Appx0106. He explained that the construction in AlexSam's case against Cigna was also similar and pointed out "two important notes" about the construction:

> The *Datastream* Court made two important notes about the "unmodified," "existing," and "standard" terms. The first note is that the terms "standard" and "existing" "are implicitly time dependent" which requires the claim scope to be limited to "types of devices in existence as of July 10, 1997." *Datastream*, Dkt. No. 199, at 8-9. The second note is to the meaning of "unmodified,"

> namely that "[i]t is a stretch of grammar to propose a construction of the simple word 'unmodified' that is divorced from the meaning ***actually implied*** by the word itself, ***which is without modification***." *Id.* (emphasis added).

Appx0106. He then recognized that AlexSam disputed the proper scope of the construction, as it "criticize[d] the Federal Circuit's *IDT* decision and ask[ed the] Court to disregard binding precedent." Appx0107. He declined that invitation, stating, "The argument that this Court should disregard the holding of the Federal Circuit on construction of the same limitation in another claim of the patent in suit is doomed to fail." Appx0107.

Judge Payne further refused to depart from the claim construction as entered by the lower court because (1) he found *IDT* was applicable; (2) AlexSam had waived any claim construction arguments it did not make previously; (3) AlexSam's attacks of the claim construction had been previously rejected; and (4) AlexSam's arguments conflicted "directly with the Federal Circuit's *IDT* holding." Appx0108-0110.

Judge Payne then turned to AlexSam's purported evidence in support of the "unmodified" claim limitation. He noted that AlexSam relied exclusively on the report of Mr. Zatkovich and the testimony of Mr. Holmes, but Judge Payne explained that, in light of the *IDT* opinion, AlexSam's evidence was insufficient. *See* Appx0110-0112. Judge Payne found that AlexSam was trying to proffer the same type of evidence this Court found insufficient in

*IDT*, and thus reached the same conclusion as in *IDT*: "Since Mr. Zatkovich (and Alexsam) relied on an improper claim construction interpretation, the resulting opinions suffer from the same defects as the evidence offered in *IDT*." Appx0111. The same was true of Mr. Holmes's testimony, which Judge Payne stated did not "offer any evidence '*whether modifications have, in fact, been made for any reason*' to the POS terminals used in the accused system." Appx0112 (quoting *IDT*, 715 F.3d at 1342). Judge Payne therefore recommended granting Cigna's motion for summary judgment of non-infringement and denying AlexSam's motion for summary judgment of infringement.

AlexSam filed objections to the R&R. *See generally* Appx1039-1049. It contended Judge Payne had erred for three reasons: (1) "the R&R fail[ed] to apply the parties' agreed upon claim construction for 'unmodified'"; (2) "AlexSam's evidence and arguments [fell] squarely within the holding in *AlexSam v. IDT*"; and (3) "the R&R failed to examine the totality of the evidence presented by AlexSam and its expert in the light most favorable to AlexSam as the non-movant." Appx1040. AlexSam then relied heavily on the *Datastream* opinion to argue why it believed Judge Payne's rulings were wrong. *See generally id.* At no point did it argue the construction itself was

wrong or that the *Datastream* court reached that construction via improper means or a misapplication of the law.

District Judge Schroeder held a hearing on AlexSam's objections on February 10, 2022. *See generally* Appx2289-2336. At that hearing, **for the first time**, AlexSam took issue with the construction of the "unmodified" term. And it did so in tortured fashion, arguing that the *Datastream* construction was correct but that the methodology behind arriving at that construction was incorrect. *Compare* Appx2313 (AlexSam's counsel arguing, "I think it bears emphasis that we're not seeking a new claim construction."), *with* Appx2296 (AlexSam's counsel arguing, "[W]e're not saying that our understanding of Judge Ward's claim construction is wrong; what we're saying is his methodology can't be adopted and relied on in the manner that the R&Rs do"), Appx2313 ("It's undisputed that the methodology used in *Datastream* has been expressly disapproved."). No matter AlexSam's argument, it seemingly ignored the fact that AlexSam itself had proposed and then agreed to the construction entered in this case, regardless of what happened in *Datastream* or other prior *AlexSam* cases.

In any event, Judge Schroeder was not persuaded by AlexSam's arguments, untimely or otherwise. On March 16, 2022, he issued an opinion overruling AlexSam's objections and adopting Judge Payne's R&R in full. *See*

*generally* Appx0001-0006. Judge Schroeder found Judge Payne had "sufficiently addressed the metes and bounds of *IDT* and carefully applied *IDT*'s reasoning to the facts of this case." Appx0002. In response to AlexSam's objections, Judge Schroeder found (1) "the R&R does not present a new claim construction"; (2) "AlexSam's new proposed claim construction . . . disregards both" *Datastream* and *IDT*; and (3) "there is no substantial difference between what was presented in *IDT* and what AlexSam presented before this Court at summary judgment." Appx0002-0004. He then entered final judgment in favor of Cigna. *See* Appx0006.

This appeal followed.

## SUMMARY OF THE ARGUMENT

AlexSam's arguments are untimely, are incorrect, and have been properly rejected by this Court, the lower court, and other courts multiple times. At the outset, many of AlexSam's arguments were raised for the first time at the hearing on AlexSam's objections to Judge Payne's R&R—not in claim construction briefing, summary judgment briefing, at the summary judgment hearing, or even in AlexSam's written objections to Judge Payne's R&R. No, the first time Cigna heard these arguments was when AlexSam uttered them before Judge Schroeder in a last-ditch effort to save its case. This Court could ignore those arguments to affirm the lower court's judgment.

But even considering those arguments would not change the outcome. AlexSam contends the lower court used an "unadvocated-for construction," yet it never identifies that construction. AlexSam also fails to mention that it advocated for the construction used by the lower court and that it agreed to that construction at the *Markman* hearing. AlexSam also hides the fact that it previously sought to undo that construction in a prior case, but such efforts were rebuffed by another judge in the same district. AlexSam mentions none of this so that it can here try to contend the lower court applied the wrong construction, even though AlexSam states on appeal that the construction, as written, is correct. AlexSam offers no authority for its proposition that a court's construction can be misapplied when the construction itself is right but the "underlying analysis" is supposedly wrong.

Further, whether applying AlexSam's newly-proposed, untimely, and waived construction, or the agreed-upon construction before the lower court, or even the lower court's **phantom** "unadvocated-for construction," nothing changes in the outcome of this case. AlexSam failed to procure and proffer any evidence that any accused Cigna products were, in fact, used at "unmodified existing standard point-of-sale devices" before the '608 Patent's expiration. Its only purported evidence consists of mischaracterized witness testi-

mony and conclusory expert opinion. AlexSam argues that because the accused Cigna products were processed by a card processor that operated using standardized transaction data, and because that card processor **did not require** modifications to POS devices to process those transactions, then AlexSam did provide some evidence of infringement.

That is precisely the same type of evidence this Court already found insufficient as a matter of law to prove infringement in *IDT*. That precedent should be followed here, and the lower court's judgment should therefore be affirmed.

## ARGUMENT

### I. Standard of Review

Summary judgment is proper if the moving party demonstrates that there is no genuine dispute of material fact, and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997). Claim construction is a legal matter. *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010) (citing *Cyber Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)). "Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the

question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills*, 103 F.3d at 983; *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

This Court reviews a grant of summary judgment under the law of the regional circuit, which in this case is the Fifth Circuit. *See Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013) (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012)). The Fifth Circuit reviews a grant of "summary judgment *de novo*." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (citing *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017)).

## II. Much of AlexSam's argument is new and therefore waived.

AlexSam's main contention in its Blue Brief is that Judge Payne "failed to apply the current law of claim construction in construing the claim term 'unmodified.'" (Blue Br. at 20.) That argument is not only incorrect, but it is also untimely and may be deemed waived by this Court for at least two reasons.

1. AlexSam could and should have raised any claim construction issues with the "unmodified" term during the lower court's claim construction

(or even its summary judgment) process. It did not do so then and cannot do so now.

2. AlexSam only first raised its arguments about the "improper methodology" used in *Datastream* and its impact on Judge Payne's decision at the hearing on its objections to Judge Payne's R&R—AlexSam did not make this argument during claim construction, summary judgment briefing, the hearing on the summary judgment motions, or briefing on AlexSam's objections to Judge Payne's R&R.

Accordingly, the Court need not take up the majority of AlexSam's arguments because they were not first properly raised below.

First, AlexSam waived its ability to raise these claim construction arguments by not timely raising them when required under the lower courts' Local Patent Rules and Docket Control Order. "[W]here a court has prescribed specific claim construction procedures and the parties have proceeded towards trial in reliance thereon, the court has discretion to 'preclude parties from injecting new claim construction theories on the eve of trial.'" *Intell. Ventures II LLC v. BITCO*, No. 6:18-CV-00298-JRG, 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019) (citing *Battcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011)). AlexSam argues now, well past the lower court's deadlines, that the meaning and scope of the claimed

"unmodified . . . [POS] device" should be construed to exclude only POS devices meant for use in a closed system. (*See* Appx0108-0109.)

AlexSam's last-minute attempt to raise this untimely, waived claim construction argument violated myriad aspects of the lower court's Local Patent Rules. If AlexSam wanted to make this claim construction argument, it needed to have done so during the court's extensive claim construction proceedings, which overlapped the fact discovery period by seven months. AlexSam's failure to do so waived its ability to later raise these arguments at summary judgment, in objections to the R&R, and certainly on this appeal. Judge Payne properly remarked these arguments were waived below. *See* Appx0108 ("[T]he Court declines to hear waived claim construction arguments that could have and should have been raised in the first instance during claim construction."). This Court should afford Judge Payne's waiver ruling the discretion it deserves and affirm the same here.

Second, AlexSam's arguments regarding the proper interpretation of the construction of the "unmodified" term are novel and first raised on this appeal, and they should be deemed waived. This Court's "precedent makes clear that in the context of claim construction, a waiver may occur if a party raises a new issue on appeal, as by, *e.g.*, presenting a new question of claim scope." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir.

2002) (citing *Interactive Gift Express, Inc. v. Compuserver, Inc.*, 256 F.3d 1312, 1347 (Fed. Cir. 2001)).

Here, AlexSam's argument is that "[w]hile the *Datastream* construction of 'unmodified' was not wrong, the *Datastream* Court's reasoning was later abrogated and the District Court's reliance on it below was in error." (Blue Br. at 27.) Thus, AlexSam is allegedly not arguing the construction should be different, but that its scope should be interpreted differently. This argument raises a new question of claim scope, one that could and should have been raised during claim construction below, instead of being mentioned for the first time at a hearing on AlexSam's objections to the magistrate judge's R&R and now rehashed on appeal. This Court may therefore affirm the lower court's judgment without considering AlexSam's untimely and waived arguments.

## III. The district court properly applied the agreed-upon construction in this case.

AlexSam's untimely and waived arguments are also wrong. The lower court adopted a construction below that AlexSam initially identified in its infringement contentions, that AlexSam proposed during claim construction exchanges, that AlexSam pursued through claim construction briefing, that AlexSam agreed to at the *Markman* hearing, and that AlexSam ultimately unsuccessfully sought to apply in its expert's report and summary judgment

briefing. AlexSam now seeks to undo all of that to argue the claim construction it proposed multiple times is narrower. AlexSam's arguments should fail.

### A. AlexSam itself proposed the construction it now complains of, one adopted by several courts post-*Datastream*.

AlexSam improperly seeks another bite at the claim construction apple that it readily bit into below. From the outset of this case, AlexSam proposed the term "unmodified standard existing point-of-sale device" to mean "a terminal for making purchases that is of the type in use as of July 10, 1997, and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." AlexSam not only proposed this construction, but it also reiterated time and again that prior courts, beginning with the *Datastream* opinion, had construed this term similarly, Appx0598, and it implored the lower court to "not make any changes to this **long-standing, prior construction, which aligns completely with controlling authority**." Appx0823 (emphasis added). Yet now it asks this Court to ignore its own "controlling authority" **and** change the construction.

AlexSam does not explicitly ask for a different construction, of course. It recognizes that would be improper in light of the overwhelming precedent

construing the term as the lower court did. (*See* Blue Br. at 27 ("First, the [*Datastream*] Court's recitation of relevant facts and ultimate construction of the term 'unmodified' was correct.").) Instead, AlexSam allegedly takes issue with the *Datastream* court's "claim construction analysis," which AlexSam now contends is incorrect "in light of modern jurisprudence." (*Id.*) There are several issues with AlexSam's argument.

First, **AlexSam agrees that the *Datastream* construction is correct**. AlexSam somehow contorts itself to agree with the construction but at the same time contend the *Datastream* court's **analysis** was somehow incorrect and therefore, here, the lower court's **interpretation** of the construction was incorrect because it was applying a methodology used in *Datastream* that the Federal Circuit ruled inappropriate when this Court abrogated *Texas Digital* in *Phillips*. (*See* Blue Br. at 29-32.) That argument is not only confusing—it is utter nonsense. "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The lower court exercised that power, and the parties were then required to apply, in any infringement analysis, the court's **construction**, not its **analysis underlying the construction**. And AlexSam (apparently) agrees the construction is correct.

Further, AlexSam ignores the cases post-*Datastream* where a court construed the "unmodified" term in the identical manner as in *Datastream*, even after this Court's opinion in *Phillips*. As AlexSam noted in its opening claim construction brief below, the "unmodified" term had been construed the same way on several different occasions, including, for example, the *Humana* case, which postdated *Phillips* by four years. *See AlexSam, Inc. v. Humana, Inc.*, No. 2:07-cv-288, 2009 WL 2843333, at *8 (E.D. Tex. Aug. 28, 2009); *see also* Appx0601-0783 (AlexSam noting the many cases where the term was construed similarly). AlexSam says nothing about why all of these opinions (that AlexSam itself previously referred to as "controlling authority") would construe the term the same way even though most of them were post-*Phillips*.

In fact, AlexSam tried unsuccessfully to alter the construction in one case **eight years after *Phillips***. In *AlexSam, Inc. v. Best Buy Co., Inc.*, No. 2:10-cv-00093, Dkt. No. 180 (E.D. Tex. Apr. 9, 2012) (located at Appx0664-0704), AlexSam sought to construe a nearly identical[8] term as "a terminal for making purchases at a retail location of the type in use as of July 10, 1997

[8] The term in that case was "unmodified existing standard **retail** point-of-sale device."

that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware **for use in routing transactions in the card system**." Appx0686 (emphasis added). AlexSam explicitly asked the *Best Buy* court to depart from the *Datastream* construction by broadening it to note only modifications "for use in routing transactions in the card system" would preclude a system from infringing. *See id.* The *Best Buy* court expressly refused to do so, finding the *Datastream* construction was appropriate in light of the intrinsic record, an intrinsic record that included the very same prosecution history AlexSam now argues requires a different interpretation of the term than the lower court's. *See* Appx0624-0626. The *Best Buy* court therefore construed the term the same way it was construed in this case, which is the same way this Court previously construed it in *IDT* and the same way the courts in *Datastream*, *Humana*, and several other cases did. *See id.*

AlexSam makes no mention of its prior attempt to rewrite the construction applied in *IDT* because that history is unfavorable to its new argument that, on the one hand, the *Datastream* construction was correct but, on the other, the underlying analysis was not. Such an argument is untenable in the face of the multiple post-*Phillips* opinions, including *Best Buy*, construing the term just as the lower court did here.

### B. The lower court properly applied the construction.

The lower court's application of that construction was also appropriate here. AlexSam now, for the first time on appeal, contends the lower court "used an unadvocated-for construction to grant summary judgment without prior notice." (Blue Br. at 38.) That is quite a statement to make considering the lower court's construction was, aside from two clarifying commas, exactly what AlexSam proposed in this and many other cases. That is, AlexSam advocated for the lower court's "unadvocated-for construction."

In this section of its Blue Brief, AlexSam never actually states what the lower court's mysterious "unadvocated-for construction" was. Because there was none. What AlexSam is really arguing is that "for use in the card system" was somehow not only improperly interpreted by the lower court, but that it's also wrong. As noted above, AlexSam had previously tried to limit that phrase to only modifications affecting routing transactions, and its attempt was properly rejected by the *Best Buy* court. Appx0624-0626. AlexSam then tried those same arguments here, and once again, the lower court rejected them. *See* Appx0109 ("Therefore, any modification to the software or hardware that impacts how the POS device would be used in the card system would fall outside the scope of the claims."); *see also* Appx0110 ("*IDT* holds that Alexsam needed to prove whether any POS terminal used in the accused

system was modified, at all, with respect to its hardware or software (i.e. without modification) . . . ."). AlexSam's tired (and waived) arguments should be rejected once again.

AlexSam also contends, falsely, that Cigna agrees the lower court's construction was "inaccurate." (Blue Br. at 5.) That is not true, and a review of the record illuminates why AlexSam's attempts to strictly limit the types of modifications that would preclude infringement must fail. To make this argument, AlexSam cites to an excerpt from the hearing on its objections to the R&R where defense counsel for Cigna explained that the construction does not contemplate that **any** modification whatsoever to a POS device precludes infringement. (*See* Blue Br. at 5.) And that is true: the construction clearly says only modifications impacting a POS device's "use in the card system" preclude infringement, and Judge Payne explicitly recited that in his R&R. *See* Appx0109.

Cigna's counsel never suggested Judge Payne was wrong or inaccurate. The excerpt from the hearing explains that there are modifications that could be made to POS devices that may not alter their "use in the card system," such as "if you put a sticker on the device, if you change the power cord, [or] if you change the graphical user interface." Appx2312. These modifications arguably do not alter the POS device's operation within the card system, so

they may not preclude infringement. Accordingly, the proper interpretation is not that any modification precludes infringement. That said, the precluding (and thus non-infringing) modifications are not limited solely to those involved in routing transaction data, as AlexSam now asks this Court to believe.

The bigger problem for AlexSam in this case, however, is not about the application of the lower court's claim construction. It is that, as explained below, AlexSam had no evidence whatsoever about the hardware or software makeup of any POS device involved in any transaction involving any accused Cigna products during the life of the '608 Patent. Therefore, in addition to its claim construction arguments being untimely, fatally defective, and rejected multiple times by several different judges, AlexSam's case also fails because it did not proffer evidence to prove satisfaction even of its own interpretation of the "unmodified" term.

## IV. AlexSam has no evidence of infringement.

The purported evidence AlexSam offered in support of showing the "unmodified" limitation was met by Cigna's accused products is insufficient as a matter of law to show even a genuine issue of fact as to non-infringement. Its expert, Mr. Zatkovich, admitted during deposition that he had no

evidence to show whether any of the transactions involving the Cigna accused products actually occurred at unmodified point-of-sale devices. *See* Appx1776. That admission alone should doom AlexSam's infringement case.

Further, the purported evidence put forward by Mr. Zatkovich and AlexSam was already and explicitly deemed insufficient by this Court in *IDT*. The table below compares the verbiage used by Mr. Zatkovich in his infringement report with the holdings of this Court regarding similar evidence from AlexSam in *IDT*:

| **Mr. Zatkovich** | **"Evidence"** | ***IDT*** |
|---|---|---|
| "Unmodified standard retail point-of-sale devices can transmit standardized data and transaction messages for Cigna card transactions. . . . **All accused Cigna cards and transactions adhere to related POS standards . . . .**" Appx1478-1479 (emphasis added). | **POS devices read standardized data** | "Baker testified . . . that the terminals 'are the same as terminals that existed in July of 1997 from the standpoint that **they are able to read a standard … card . . . .**'" *IDT*, 715 F.3d at 1342 (emphasis added). |
| "No POS device **needs to be modified**." Appx1481 (emphasis added). | **No modifications required** | "Baker testified . . . that '**no modification *was required***' because IDT's system '*requires* the same capabilities as reading a standard credit card or debit card." *IDT*, 715 F.3d at 1342 (bolded emphasis added). |

| Mr. Zatkovich | "Evidence" | *IDT* |
|---|---|---|
| "This standardization encompasses the POS equipment and methods used to a) **capture card data** . . . b) **to transmit transaction messages** from the POS device to an acquirer, and c) **to receive response messages** when those transactions are processed." Appx1479 (emphasis added). | **POS devices can capture, transmit, and receive card data** | Baker "testified that the terminals used to activate IDT's phone cards are "the same as terminals that existed in July of '97 with respect to **the ability to read a magnetic stripe and send that information on to the next step** without any modifications made to that terminal in that respect." *IDT*, 715 F.3d at 1342 (emphasis added). |

As Judge Payne noted below, AlexSam offered the same evidence here as it did in *IDT*, and this Court should therefore reach the same conclusion that it previously reached in *IDT*. *See* Appx0111 ("Here too Alexsam offers the same evidence.").

AlexSam responds to this point by once again returning to its once-abandoned suggestion that this Court was wrong in deciding *IDT*. Despite conceding its prior rebuke of *IDT* was "a mistake" and "regrettable," (*see* Blue Br. at 18, n.9), AlexSam still suggests this Court overlooked something in that opinion: "Moreover, it appears that the *IDT* Court did not consider, let alone explain, the meaning of the phrase 'for use in the card system,'" (Blue Br. at 40.)

Nonsense. This Court explicitly recited the entire claim construction, including "for use in the card system," when it held AlexSam had failed to meet its burden. *See IDT*, 715 F.3d at 1341-42. Further, during that prior Federal Circuit appeal taken by AlexSam, it argued that its expert witnesses "confirmed that they followed the Court's claim construction in reaching their opinions." (*See* Appx2092-2184.) The issue of whether AlexSam's evidence was sufficient in light of the proper construction was therefore fully before this Court in 2013, when it previously considered this very issue and came down firmly against AlexSam. AlexSam did not timely seek rehearing or *certioarari* of that 2013 *IDT* ruling, so it cannot complain about the correctness of the *IDT* opinion now.

AlexSam also contends that its "evidence" in this case differs from that found insufficient in *IDT* for three reasons. First, AlexSam "utilized the opinion of a POS expert." (Blue Br. at 42.) Second, that expert "reviewed the information obtained from Cigna's intermediary partner (Alegeus)." (*Id.*) And third, "the POS devices used to transmit card data to Alegeus were unmodified for such transmission." (*Id.*) AlexSam does not explain how its first two arguments materially distinguish its alleged "evidence" from that put for-

ward in *IDT*, but those two points are largely irrelevant. What is most important is AlexSam's third argument as to whether the POS devices were "unmodified," and it is here where AlexSam's argument fails as a matter of law.

AlexSam has no evidence regarding whether POS devices at which Cigna accused products were used prior to the '608 Patent's expiration were modified or not. Its "expert" conceded this point. *See* Appx1776. AlexSam takes issue with Cigna's characterization of the expert's testimony, but there is no characterization: Cigna asked Mr. Zatkovich if he had "any evidence that [the accused products] actually, in fact, were used at unmodified point-of-sale devices during the relevant time frame," and he responded, "No, I have no personal knowledge of that." (*See id.*) Zatkovich's answer was clear and unequivocal. His answers to the immediately preceding questions also made clear that he was staking his infringement opinion only on the allegation that the accused products were "intended to be used at standard retail point-of-sale devices," but he offered no evidence, either in deposition or in his report, that they in fact were used at such devices, as required by the lower court's construction and this Court's *IDT* opinion. *See* Appx1776.[9]

[9] AlexSam also argues the mere existence of its expert's opinion "is sufficient to defeat summary judgment in the Fifth Circuit." (Blue Br. at 43.) Of course, that is not true. *See Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013), quoting *Sitrick v. Dreamworks, LLC*, 516 F.3d 993,

Further, AlexSam relied on the testimony of Mr. Holmes, who worked for Alegeus, to argue that the Alegeus system supporting the Cigna accused products used unmodified POS devices. But, at best, Mr. Holmes's testimony only suggested that Alegeus transacted with the expectation of receiving standardized transaction messages; he said nothing about the POS devices themselves or whether Alegeus actually received data from unmodified POS devices. In its Blue Brief, AlexSam excerpts several quotes from Mr. Holmes's testimony, all of which state only that Alegeus "could" or "would" receive "standard debit transaction" data. (*See* Blue Br. at 44-46.) At no point did he testify about any actual POS devices used during any actual transactions prior to the '608 Patent's expiration.

In short, AlexSam has no evidence whatsoever regarding the hardware or software makeup of any POS device used with any Cigna accused product at any time. AlexSam contends it "look[ed] to the data that was actually re-

1001 (Fed. Cir. 2008) ("Conclusory expert assertions cannot raise triable issues of material fact on summary judgment."). Mr. Zatkovich's conclusory opinion that the accused products were used at unmodified POS devices is, without more, insufficient to preclude summary judgment.

ceived by the processor," but that is not true. AlexSam points to two paragraphs[10] from Mr. Zatkovich's report in support of this contention, but neither paragraph discusses the "actual data" transmitted during any transaction involving the Cigna accused product. Instead, one paragraph refers to the use of ISO standards in the industry and the other reiterates Mr. Zatkovich's opinion that "no POS device needs to be modified" to work with the Cigna accused products. These paragraphs say nothing about the actual use of the accused products and the hardware or software of the POS devices where such use occurred during the relevant period.

AlexSam ignores that "standard card data" can be sent from modified POS devices. This Court was clear in *IDT* that "[i]n order to carry its burden of proof on infringement . . . , Alexsam needed to prove both that these systems **made use** of terminals 'of the type in use as of July 10, 1997,' and also that those terminals '**ha[d] not been reprogrammed, customized, or otherwise altered** with respect to [their] software . . . for use in the card system." *IDT*, 715 F.3d at 1341 (emphasis added).

Here, AlexSam offered no such proof. It argued only that the POS devices were "unmodified" because the Alegeus system expected to receive

[10] AlexSam's Blue Brief cites paragraphs 238-239 of Mr. Zatkovich's report, but his report only contains 145 paragraphs. Cigna therefore assumes AlexSam meant to cite to paragraphs 138-139.

standardized card data. Even if true, the expected data format to be received by a card processor proves nothing about whether that data was initially received at a POS device that "ha[d] not been reprogrammed, customized, or otherwise altered." AlexSam therefore failed to meet its burden, and the district court's judgment should be affirmed in full.

## V. Conclusion and Relief Sought

The judgment of the district court should be affirmed.

Dated: November 21, 2022

Respectfully submitted,

*/s/ Ricardo J. Bonilla*

Ricardo J. Bonilla
Neil J. McNabnay
Michael A. Vincent
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com
mcnabnay@fr.com
vincent@fr.com

*Counsel for Defendants-Appellees*
Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare of Texas, Inc.

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This Brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this Brief contains 9256 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Office Word in Georgia font, size 14.

*/s/ Ricardo J. Bonilla*

Ricardo J. Bonilla
Neil J. McNabnay
Bret T. Winterle
Lance E. Wyatt, Jr.
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com
mcnabnay@fr.com
winterle@fr.com
wyatt@fr.com

Counsel for Defendants-Appellees Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare of Texas, Inc.

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2022-1598

**Short Case Caption** Alexsam, Inc. v Simon Property Group (Texas), L.P.

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 11/21/2022

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Jacqueline K. Burt | Heninger Garrison Davis, LLC, 2727 Paces Ferry Rd., SW, Suite 750, Atlanta, GA 30339, (404) 966-0861; jburt@hgdlawfirm.com |
| Timothy C. Davis | Heninger Garrison Davis LLC, 2224 1st Ave. North, Birmingham, AL 35203, (205) 326-3336, tim@hgdlawfirm.com |
| Steven W. Richeson | Insight, PLC, 578 Washington Blvd. #503, Marina Del Rey, CA 90292, (424) 289-9191, swritcheson@insightplc.com |
| William Cornelius | Wilson, Robertson & Cornelius, P.C., One American Center, 909 ESE Loop 323, Suite 400, Tyler, TX 75701, (903) 509-5004, wcwilsonlawfirm.com |
| | |

☐ Additional pages attached.

Date: 11/21/2022

Signature: /s/ Ricardo J. Bonilla

Name: Ricardo J. Bonilla