No. 2022-1599

# United States Court of Appeals for the Federal Circuit

ALEXSAM, INC.,

*Plaintiff-Appellant*

v.

CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, AND CIGNA HEALTHCARE OF TEXAS, INC.,

*Defendants-Appellee.*

**Appeal From The United States District Court For The Eastern District of Texas In Case No. 2:20-cv-00081-RWS-RDP, Honorable Robert W. Schroeder III**

## ALEXSAM, INC.'S REPLY BRIEF

Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861

Timothy C. Davis
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Email: tim@hgdlawfirm.com
Telephone: (205) 326-3336

Steven W. Ritcheson
INSIGHT PLC
578 Washington Blvd., #503
Marina del Rey, California 90292
Email: swritcheson@insightplc.com
Telephone: (818) 744-8714

W. Lee Gresham, III
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Email: lee@hgdlawfirm.com
Telephone: (205) 326-3336

*Attorneys for Plaintiff-Appellant, AlexSam, Inc.*

December 5, 2022

**PATENT CLAIMS AT ISSUE – U.S. Patent No. 6,000,608**

32 - A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.

33 - The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, Alexsam, Inc., certifies the following:

1. The full name of every party or amicus represented by me is:

   Alexsam, Inc. (Plaintiff-Appellant)

2. The name of the real party in interest represented by me is: None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me is: None.

4. The names of all law firms and the partners or associates that appeared for Alexsam, Inc. in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   Travis Lynch
   Jonathan R. Miller
   William Cornelius

5. Related Cases: *see* section entitled "Statement Of Related Cases"

6. Organizational Victims and Bankruptcy Cases: **None**.

Dates: December 5, 2022

Respectfully submitted,

*/s/*_Jacqueline K. Burt__
Jacqueline K. Burt
*Attorney for Plaintiff-Appellant,*
*AlexSam, Inc.*

**TABLE OF CONTENTS**

PATENT CLAIMS AT ISSUE .......... i
CERTIFICATE OF INTEREST .......... ii
TABLE OF AUTHORITIES .......... iv

**INTRODUCTION .......... 1**
**ARGUMENT .......... 4**
**I. THE DISTRICT COURT'S CONSTRUCTION OF "UNMODIFIED" IS FUNDAMENTALLY FLAWED AND MUST BE CORRECTED TO COMPORT WITH THE INTRINSIC EVIDENCE. .......... 4**
**II. TEACHINGS FROM THE *BEST BUY* AND *HUMANA* CASES .......... 11**
**III. ALEXSAM DID NOT AND COULD NOT HAVE WAIVED ITS ARGUMENT ON CONSTRUCTION OF THE TERM "UNMODIFIED." .......... 15**
**IV. ALEXSAM PROFFERED EVIDENCE SUFFICIENT TO MEET THE LONG-STANDING CONSTRUCTION OF "UNMODIFIED" AS WELL AS THE HOLDING IN *IDT*. .......... 18**
**A. ALEXSAM PRESENTED EVIDENCE SUFFICIENT TO PROVE INFRINGEMENT. .......... 19**
**B. CIGNA'S ARGUMENTS ON ALEXSAM'S ALLEGED INSUFFICIENT EVIDENCE FAIL. .......... 22**
**C. CIGNA'S COMPARISON OF ZATKOVICH TO THE HOLDING IN *IDT* IS MISLEADING AND INACCURATE. .......... 25**
**CONCLUSION .......... 28**

CERTIFICATE OF SERVICE
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Carducci v. Regan*, 714 F.2d 171 (D.C. Cir. 1983) ........................................ 4

*CCS Fitness, Inc. v. Brunswick Corp.* 288 F.3d 1359 (Fed. Cir. 2002) .................. 19

*Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005) .............................. 16

*Laitram Corp. v. NEC Corp.*, 62 F.3d 1388 (Fed. Cir. 1995) ................................. 16

*O2 Micro Intern, Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351 (Fed. Cir. 2008) ........................................................................................ 16

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) *(en banc)* ......................... 14

*United States v. Great Am. Ins. Co.*, 738 F.3d 1320 (Fed. Cir. 2013) ....................... 4

## INTRODUCTION

The parties' briefing on appeal has served its purpose: it has revealed areas in which the parties agree and those areas in which the parties disagree.

First, the parties agree on an important issue. Specifically, the parties agree that the term "unmodified" does not mean without "any modification." Blue Brf.[1] at 39 ("In sum, the District Court's construction of 'unmodified' that prohibits 'any modification' whatsoever was erroneous."); Red Brf. at 36-37 ("Accordingly, the proper interpretation is not that any modification precludes infringement."). The parties agree on this point despite the fact that both the Magistrate Judge and the District Court Judge adopted an opposing view in granting summary judgment. Appx0001-0005 at 3 ("… AlexSam needed to prove whether any POS terminal used in the accused system was modified, ***at all***, with respect to its hardware or software (i.e., without modification) ….") (***emphasis*** added).

Second, the issues on which the parties do not agree can be divided into two groups: (i) issues that were raised by AlexSam in its Blue Brief that were not addressed by Cigna in its Red Brief, and (ii) issues that were raised by AlexSam in

---

[1] Appellant AlexSam, Inc. ("AlexSam") uses the term "Blue Brief" to refer to its Opening Brief (Dkt. No. 22), and the term "Red Brief" to refer to the Response Brief of Appellees Cigna Corporation, Cigna Health And Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare Of Texas, Inc. (collectively, "Cigna") (Dkt. No. 23).

its Blue Brief that were not directly disputed by Cigna in its Red Brief. Issues that were not substantively addressed by Cigna include: (a) whether the District Court should have provided "sufficient notice to allow Appellant to comply with the District Court's understanding of the construction of 'unmodified'" (Blue Brf. at 39)[2]; (b) whether the prosecution history supports AlexSam's understanding of the "unmodified" construction, which limits excluding modifications to claimed functions; and (c) whether the Federal Circuit in *AlexSam v. IDT* (hereinafter, the "*IDT* case") explained the meaning of the terminal phrase "for use in the card system.[3]" These issues are not addressed in this Reply because they were not

---

[2] Cigna purports to be uncertain about this issue. Red Brf. at 35 ("In this section of its Blue Brief, AlexSam never actually states what the lower court's mysterious "unadvocated-for construction" was. Because there was none."). Although it is true that the District Court's "any modification" construction was not quoted in each section of its brief, AlexSam clearly stated that the "unadvocated-for construction" at issue is the District Court's finding that AlexSam was required to show that no modifications at all were made to the POS devices used in the Accused System. See, e.g., Blue Brf. at 24-25 (quoting R&R, "IDT holds that Alexsam needed to prove whether any POS terminal used in the accused system was modified, at all, with respect to its hardware or software (i.e. without modification); not whether the terminals used in the accused system were solely modified for the purpose of being used in the accused system."); 32 ("The only court to conclude that 'unmodified' refers to 'any' modifications was the District Court in this case, which reached this conclusion without examining the intrinsic record."); 38-39 ("[T]he MSJ Order also stands to be overturned because the District Court, while performing a 'rolling' claim construction, failed to provide sufficient notice to allow Appellant to comply with the District Court's understanding of the construction of 'unmodified.'").

[3] The Red Brief's reference to the meaning of the phrase "for use in the card system" does not meet AlexSam's argument in its Blue Brief. See Red Brf. at 39-40 ("AlexSam still suggests this Court overlooked something in that [*IDT*] opinion:

disputed in the Red Brief.[4] However, counsel will be prepared to discuss each of these issues if the Court wishes at Oral Argument.

Issues that were disputed by Cigna in its Red Brief include: (a) whether AlexSam waived the right to seek clarification of the "unmodified" construction, even though AlexSam timely objected to the Magistrate's report and recommendation and raised the issue during the parties' subsequent oral argument before the District Court Judge; (b) the impact, if any, of this Court's prior decision in the *IDT* case; and (c) whether AlexSam presented sufficient evidence of infringement to proceed to trial (the "Disputed Issues"). These Disputed Issues are discussed further below.

---

'Moreover, it appears that the *IDT* Court ***did not consider, let alone explain***, the meaning of the phrase "for use in the card system."' ¶Nonsense. This Court explicitly ***recited the entire claim construction***, including "for use in the card system," when it held AlexSam had failed to meet its burden.'") (Citations omitted; ***emphases*** added.)

[4] "It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (citation omitted); see also *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (finding waiver when "counsel has made no attempt to address the issue" because "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them").

## ARGUMENT

### I. THE DISTRICT COURT'S CONSTRUCTION OF "UNMODIFIED" IS FUNDAMENTALLY FLAWED AND MUST BE CORRECTED TO COMPORT WITH THE INTRINSIC EVIDENCE.

As acknowledged by both AlexSam and Cigna, the claim construction at issue in this appeal is the phrase, "unmodified existing standard point-of-sale device." The construction entered by the District Court is as follows:

> A terminal [,] for making purchases [,] that is of the type in use as of July 10, 1997 [, and] that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system.

Appx0022-0081 at 59 (Appx0080).

Cigna devotes a significant portion of its Red Brief pointing to AlexSam's approval of, and advocacy for, this claim construction. See, e.g., Red Brf. at 13-14, 31-34. AlexSam agrees. It has not veered from this construction in this case. In fact, AlexSam pointed out in its Blue Brief that "this construction (with the exception of the bracketed terms and punctuation) has been used by AlexSam in litigation and business negotiations regularly since 2005, when it was first adopted." Blue Brf. at 4.

The issue before this Court is not the language of the claim construction, but rather the ***interpretation*** and the ***application*** of the claim construction, which led to what is effectively the District Court's new construction. At the heart of this appeal

is whether this Court will find that, after considering the intrinsic evidence, AlexSam is required under this claim construction to submit evidence that the POS device has not been modified ***in any way***; or, whether this Court will find that AlexSam is required under this claim construction to submit evidence that the POS device has not been modified ***for use in the card system***, which is to say, to perform the claimed functions.

AlexSam has explained with direct citations to the intrinsic evidence how the term "unmodified" was added to reflect that "no additional programming is required in the device at the point of sale;" this additional programming was a requirement of the Stimson reference to reach network devices outside the banking network. Blue Brf. at 33, citing Appx1153-1154 at 11-12. The inventor's explanation of the term unmodified relates directly to the primary function of the POS in the Asserted Claims (sending to a network device, i.e., transaction processor, over a banking network). By explaining the term in this light, the inventor directly linked "unmodified" with the claimed functions. Cigna has not refuted nor even responded to this argument, nor did the District Court discuss how its application of the construction comported with the inventor's explanation.

Instead, in granting summary judgment, the District Court simply concluded that AlexSam's evidence failed to address whether the systems had been modified "in any way." The Court stated:

> AlexSam admits "it did not analyze whether the systems had been 'reprogrammed, customized or otherwise altered' 'in any way'" because it was operating under a different interpretation of the claims. Docket No. 221 at 6. As such, AlexSam uses its evidence to support what is ultimately an incorrect view.

Appx0004.

The "different interpretation" mentioned by the District Court is a reference to AlexSam's position that the claim construction does not require proof that the POS has not been modified "in any way" but rather that the POS has not been modified "for use in the card system." The District Court's citation to Dkt. No. 221 at 6 in the above quotation is to AlexSam's Objections to the Report and Recommendation of the Magistrate Judge. AlexSam made clear in its objections that it "did not analyze whether the systems had been 'reprogrammed, customized or otherwise altered' '***in any way***' because the court must consider whether the POS device is unmodified '***for use in the card system***.'" (***Emphasis*** added.)

In the seventeen (17) years since the *Datastream* case, in which this construction was first adopted, no court, other than the District Court below, has held that AlexSam must prove that the POS has not been modified in any way. The *Datastream* Court in fact rejected the defendants' "any modification" proposed construction in favor of the construction which included the clarification, "for use in the card system." Significantly, since the *Datastream* decision, every court that has construed the AlexSam claims has included this clarification.

Importantly, Cigna concedes that it is incorrect to interpret the claim construction such that "any modification" to the POS precludes infringement. Red Brf. at 36-37. Cigna's position is that "the construction clearly says only modifications impacting a POS device's 'use in the card system' preclude infringement...." Red Brf. at 36. "Accordingly, the proper interpretation is ***not*** that ***any modification*** precludes infringement." Red Brf. at 37 (***emphasis*** added).

While both AlexSam and Cigna agree that only modifications to the POS for ***use in the card system*** preclude infringement, the District Court did not interpret and apply the claim construction within these confines. First, the Report and Recommendation (Appx0101-0114; "R&R"), which the District Court adopted, is internally inconsistent. On page 9 of the R&R, the Magistrate Judge states the following:

> Therefore, any modification to the software or hardware that impacts how the POS device would be used in the card system would fall outside of the scope of the claims.

Appx0109.

At first blush, the foregoing language appears to be consistent with AlexSam's view in that the sentence limits the disqualifying modifications to those in which the POS hardware or software has been modified for use in the card system--although there is still no clarity about whether the referenced "card system" is ***AlexSam's***

patented card system.[5] Again, the reach of the disqualifying language in the claim construction at issue is not "any modification" or "in any way", but instead, it is ***for use in the card system of the '608 Patent***. Notably, this is the key (and as yet un-analyzed) phrase of the construction.

On page 10 of the R&R, however, the Magistrate Judge broadened the disqualifying language considerably, which is where the District Court also went wrong. The R&R states as follows:

> IDT holds that AlexSam needed to prove whether any POS terminal used in the accused system was modified, ***at all***, with respect to its hardware or software (i.e. without modification); not whether the terminals used in the accused system were solely modified for the purpose of being used in the accused system.

Appx0110, ***emphasis*** added.

The above language does not confine the disqualifying modifications to those that are "for use in the card system." To the contrary, according to the R&R, any modification to the POS terminal "at all," with respect to its hardware or software, would preclude infringement. This interpretation is not consistent with the claim construction agreed to by the parties. It is not consistent with the construction entered

[5] This was the conclusion reached by Magistrate Judge Craven in the *AlexSam v. Best Buy* case. Appx0664-0704 (Dkt. No. 180), p. 25 ("As such, the inventor informed the Patent Office that his invention covered terminals that did not require any additional programming or custom software for using ***his*** card system.") (***Emphasis*** added.)

by any prior District Court that has addressed this claim term. And, finally, AlexSam respectfully submits, it is not the holding of this Court in *IDT*.

AlexSam timely objected to the R&R, and it specifically asserted that "the R&R fails to apply the parties' agreed upon claim construction for 'unmodified….'" AlexSam supported this assertion by stating, among other reasons, as follows:

> Although the R&R cites the construction of Unmodified POS in the CC Order, it does not apply the construction or evaluate its impact on the parties' summary judgment arguments. Instead, the R&R applied a new claim construction, *sua sponte*, finding "*IDT* holds that AlexSam needed to prove whether any POS terminal used in the accused system was modified, ***at all***, with respect to its hardware or software (i.e., without modification); ***not whether the terminals in the accused system were solely modified for the purpose of being used in the accused system***." R&R, p. 10. (***Emphases*** added.) This conclusion is not supported by any citation to the actual language of the *IDT* Opinion and the opinion does not, in fact, support such a conclusion.

Appx1039-1049 at 4 (Appx1043).

At the hearing on AlexSam's objections to the R&R, AlexSam devoted a significant part of its oral argument to demonstrating that to interpret the agreed upon claim construction in a manner such that any modification to the POS precludes infringement is not only legally flawed, but also, is nonsensical in the real world. First, AlexSam highlighted the fact that the *Datastream* Court rejected the defendants' argument that any modification to the POS device was not permitted and, instead, limited "unmodified" with the phrase "for use in the card system" to

explain the type of modifications that were within the scope of the claim. Appx0429-0476 at 13:3-14:18 (Appx0433).

Second, AlexSam's counsel listed three of many modifications to the hardware or software that could be made to the POS devices that would not be for use in the card system. Appx0429-0476 at 32:6-12 (Appx0437). These included placing a sticker on the hardware, changing the power cord, and changing the graphical user interface (GUI). Id. In response to AlexSam's presentation, Cigna's counsel acknowledged that those are not the "kinds of modifications contemplated by this construction" and that the relevant consideration is "any modification for use in the card system." Appx0429-0476 at 90:4-19 (Appx0452).

Despite apparent agreement by AlexSam and Cigna at the hearing that the proper interpretation is ***not*** that any modification precludes infringement but rather only those modifications for use in the card system, the District Court recited and affirmed the "at all" interpretation set forth by Magistrate Judge. ("IDT holds that AlexSam needed to prove whether any POS terminal in the accused system was modified, at all, with respect to its hardware and software…."). Appx0003. In its Order adopting the R&R, the District Court faulted AlexSam for not analyzing whether the systems had been modified "***in any way***." *See, supra*. The District Court cited to AlexSam's objections wherein AlexSam emphasized that "the Court must consider whether the POS device is unmodified for use in the card system."

Appx1044. The District Court then wrongly concluded that "as such, AlexSam uses its evidence to support what is ultimately an incorrect view." Appx0004. The Court agreed with the R&R—that "*IDT* squarely rejects AlexSam's proposed construction and articulates that the claim language is not limited to 'closed systems'"—and purported to follow the Federal Circuit's precedent in *IDT*. Appx0101-0114 at 9–10 (Appx0109-0110).

Respectfully, the District Court was wrong. As AlexSam ***and Cigna*** have stated, only modifications for use in the card system preclude infringement. Blue Brf. at 39; Red Brf. at 36-37. That is the correct view. AlexSam submitted evidence of infringement based solely on this correct view: whether the POS was modified with respect to its software or hardware for use in the card system.

The "incorrect view" is that "any modification" to the POS precludes infringement, or that there is no infringement if the POS terminal has been modified "at all," or that infringement cannot be proven if the systems have been reprogrammed, customized, or otherwise altered "in any way." Any such finding is inconsistent with the prosecution history and with prior holdings in *Datastream, IDT,* and others, and it also takes the construction far outside the scope of the '608 patented system. In so holding, the District Court erred.

## II. TEACHINGS FROM THE *BEST BUY* AND *HUMANA* CASES

Cigna states that "AlexSam ignores the cases post-*Datastream* where a court

construed the 'unmodified' term in the identical manner as in *Datastream*, even after this Court's opinion in *Phillips*." Red. Brf. at 33. Cigna misses the mark in two ways. First, AlexSam ignored no such cases, but rather it listed in its brief all nine cases that have considered this issue, including those before and after *Phillips.* Blue Brf. at 5, footnote 2. This listing included the *Best Buy* and the *Humana* cases that are referenced by Cigna.

Cigna also mistakenly focuses only on the language of the District Court's claim construction *per se* and not on how the District Court interpreted and applied the construction. Certainly, the wording of the claim constructions in the nine cases is nearly identical to the wording of the claim construction in this case. As Alexsam pointed out in its brief, a review of the nine cases reveals that they "all included 'for use in the card system' as a limitation on the word 'modified.'" Blue Brf. at 5. Those nine cases, however, will not reveal a construction, interpretation or finding that AlexSam is required to prove that the POS was not modified "at all" or "in any way." That finding resides solely in this case.

Cigna highlights the *Best Buy* case for the fact that the court there rejected a proposed construction that included "a terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware ***for use in routing transactions in the card system***." Red. Brf. at 34, (***emphasis*** in Cigna's

brief). Cigna argues that by rejecting the proposed construction in favor of the *Datastream* construction, the "*Best Buy* court therefore construed the term the same way it was construed in this case…" Red. Brf. at 34.

The *Best Buy* case is important for several reasons, none of which are favorable to Cigna. First, the Court there relied on the *Phillips* decision, the pivotal case that held that the *Texas Digital* methodology "placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources, in particular the specification and prosecution history." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1320 (Fed. Cir. 2005) *(en banc)*; *Best Buy* Order at Appx0669. AlexSam discussed the importance and application of the *Phillips* decision, as well as the AlexSam patent prosecution history, in detail in its Blue Brief. Blue Brf. at 27-32. The *Best Buy* opinion fully supports AlexSam's analysis. Other than a passing reference, Cigna does not address the prosecution history relevant to this case.

Second, after thoroughly reviewing the prosecution history of the AlexSam patent, the *Best Buy* Court did not find that AlexSam needed to submit evidence to demonstrate that the POS was not modified "at all" or "in any way." That would be totally inconsistent with the prosecution history. Instead, the *Best Buy* Court appropriately limited "unmodified" by including in its construction the phrase, "for use in the card system."

Third, the fact that the *Best Buy* Court rejected the language "for use in routing transactions in the card system" is in no way inconsistent with AlexSam's position. In its Blue Brief, AlexSam provided this Court with a summary of the claimed functions of the '608 patent. These functions include transmitting card data, obtaining card data (*e.g., via* card "swipe"), and obtaining purchase data (*e.g., via* "entering"). Dkt. 22 at 10, fn 6. A construction which includes the phrase "for use in the card system" would cover all of these functions, whereas a construction with the language "for use in routing transactions" could unnecessarily limit the relevant claim functions. In this case, while the claimed function at issue is the transmission, or sending, of the card data, that function is appropriately covered by the "for use in the card system" phrase.

Again, the District Court's error is not in the adoption of the parties' agreed upon language of the claim construction, but rather in the Court's interpretation and application of that construction, which amounted to a new construction, at the summary judgment stage. That is where AlexSam learned for the first time that it needed to meet a different evidentiary standard of proof ("at all" or "in any way") and that the disqualifying modifications potentially included unclaimed functions; that is inconsistent with the relevant prosecution history, with this Court's *Phillips* decision, and with nine district court decisions, including *Best Buy*.

## III. ALEXSAM DID NOT AND COULD NOT HAVE WAIVED ITS ARGUMENT ON CONSTRUCTION OF THE TERM "UNMODIFIED."

Contrary to Cigna's assertion in its Red Brief, AlexSam could not have waived a claim construction argument that it did not know it needed to make until the Magistrate Judge's R&R was issued. See generally, Red Brf. at 27-30. It was only then – ***for the first time*** – that AlexSam understood that the District Court had "failed to apply the current law of claim construction in construing the claim term 'unmodified.'" Red Brf. at 27 (citing Blue Brf. at 20). Therefore, AlexSam never knew that it needed to make this argument during the claim construction process because the District Court's opinion was not known until the summary judgment phase of the case.

The District Court's claim construction ruling is reviewed *de novo*. *Laitram Corp. v. NEC Corp.*, 62 F.3d 1388, 1392 (Fed. Cir. 1995). "Federal Circuit law controls waiver in the context of claim construction arguments." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005). Further, an appellate court retains case-by-case discretion over whether to apply waiver. Id. This Court has found that no waiver has occurred when, as here, "the arguments advanced in support of [a] construction may have changed, [while] the construction itself remains the same." *O2 Micro Intern, Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360-61 (Fed. Cir. 2008).

Cigna alleges that AlexSam's arguments are "untimely and may be deemed

waived by this Court" for two reasons. Red Brf. at 27. First, Cigna claims that "AlexSam could and should have raised any claim construction issues with the 'unmodified' term" before the District Court.[6] Id. at 27-28. Second, Cigna argues that "AlexSam only first raised its arguments about the 'improper methodology' used in *Datastream* and its impact on Judge Payne's decision at the hearing on its objections to Judge Payne's R&R…." Id. at 28.

It is undisputed that the parties stipulated to the long-standing construction of the claim term "unmodified" during the claim construction process in the case. Therefore, during claim construction, this claim term was not the focus of any argument in the parties' briefing or at the hearing. It was a known term and a known construction that had not changed over the course of many years. Notably, the Magistrate Judge did not address the term "unmodified" during the claim construction process. Consequently, AlexSam prepared its case after claim construction without any knowledge whatsoever that there was a disagreement with

---

[6] Cigna raises but does not directly address an issue that AlexSam agrees deserves consideration on appeal. In its Red Brief, Cigna states that "AlexSam argues now, well past the lower court's deadlines, that the meaning and scope of the claimed "unmodified . . . [POS] device" should be construed to exclude only POS devices meant for use in a closed system." Red Brf. at 28-29. Although AlexSam did not urge this Court to find that the term "unmodified" excludes only "closed systems" in its Blue Brief, the Court might still consider whether and how the term "unmodified" was used by the inventor in relation to "closed systems" as part of its evaluation of the intrinsic evidence.

regard to the construction of "unmodified." It was not until the Magistrate Judge entered the R&R that AlexSam understood how this term was being construed, and at that time, ***for the first time***, AlexSam presented its argument. The timeline here matters. AlexSam first raised its objection to the construction of "unmodified" after the claim construction process, but it did so when it first became aware of the issue – ***after*** the R&R.

Cigna next points to AlexSam's argument that "[w]hile the *Datastream* construction of 'unmodified' was not wrong, the *Datastream* Court's reasoning was later abrogated and the District Court's reliance on it below was in error" (hereinafter, the "*Datastream* Argument"). Red Brf. at 30 (citing Blue Brf. at 27). Cigna claims that the *Datastream* Argument "could and should have been raised during claim construction below, instead of being mentioned for the first time at a hearing on Alexsam's objections to the magistrate judge's R&R and now rehashed on appeal" Id. Here, again, the timeline explains why this is wrong. During claim construction, AlexSam would not have known to argue about a claim construction that was contrary to that stipulated to by the parties. It would have been impossible for AlexSam to have predicted that, long after the parties' stipulated to the construction of "unmodified" and after the District Court entered its claim construction order, an issue surrounding the long-standing construction of "unmodified" would surface during summary judgment. Cigna's argument that

AlexSam waived its argument here is incorrect.

Cigna next points to this Court's holding in *CCS Fitness, Inc. v. Brunswick Corp.* 288 F.3d 1359, 1371 (Fed. Cir. 2002), to allege that AlexSam's argument should be deemed waived. Red. Brf. at 29. However, the *CCS Fitness* case in fact provides that:

> A waiver will not necessarily occur, however, if a party simply presented new or additional arguments in support of 'the scope of its claim construction, on appeal.' *Id.* In addition, we look to see whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of a claim limitation.

*CCS Fitness*, 288 F.3d at 1371. Further, AlexSam ***did*** raise the *Datastream* Argument during the summary judgment process, including during the hearing before the District Judge. Appx0429-0476 at 20-28 (Appx0434-0436).

In sum, AlexSam's arguments were not untimely, they were properly preserved, and they should not be deemed waived.

## IV. ALEXSAM PROFFERED EVIDENCE SUFFICIENT TO MEET THE LONG-STANDING CONSTRUCTION OF "UNMODIFIED" AS WELL AS THE HOLDING IN *IDT.*

Applying the construction of "unmodified" that was agreed to by the parties, AlexSam presented sufficient evidence to proceed to trial. As explained in detail in the Blue Brief, AlexSam relied, in large part, on the opinion of its POS expert, Ivan Zatkovich ("Zatkovich"), as well as evidence and testimony from Cigna and from

its intermediary partner, Alegeus, to establish its claim of infringement. *See* Blue Brf. at 40-50. This evidence and testimony proved that Alegeus received transaction messages from POS devices that were unmodified because they used transmission standards that were generally used in financial transactions at the time of the invention. Appx1440-1448 at ¶¶60-66; Appx1478-1479 at ¶131 (listing card data and transaction messaging standards as of the July 10, 1997, that were used by Cigna's cards and transactions); and Appx1480-1481 at ¶¶138-139. The use of these standards proves that the POS devices had not been modified – i.e., had not been customized, etc. – in order to reach Cigna's processing hub at Alegeus through the transaction processor. See, e.g., Appx1481 at ¶139. Mr. Zatkovich thus concluded that Cigna's Accused Products infringed the Asserted Claims. Appx1484 at ¶145.[7]

Cigna argues that AlexSam produced no evidence of infringement; this argument is wrong, as AlexSam explained in its Blue Brief and as is highlighted in the discussion below.

### A. AlexSam Presented Evidence Sufficient to Prove Infringement.

Mr. Zatkovich supported his infringement opinion with reference to the specific claim at issue (Appx1478 at ¶129), reference to the Court's claim construction (Appx1478 at ¶130), reference to the deposition testimony of Cigna's

[7] Critically, this is the opinion of a POS expert, a specialty the *IDT* Court noted was absent in that case.

intermediary partner (Appx1478 at ¶131, Appx1481 at ¶139, Appx1482 at ¶142, and Appx1483 at ¶143), and reference to the ISO standards that were used to transmit card data and transaction messages from the POS device in the accused system (Appx1478-1479 at ¶131; Appx1480-1481 at ¶¶136-138). He expressed the opinion that "an unmodified existing standard retail point of sale device" is "governed by" the relevant ISO standards (Appx1481 at ¶138) and that "all accused Cigna cards and transactions adhere to related POS standards as of July 10, 1997…." Appx1478-1479 at ¶131.

Zatkovich concluded that the ISO standards prove that the card data is received by the transaction processor from an unmodified POS:

> "POS device functions within the claim limitations performed for use in the system are 'a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;' ('608 claim elements 32.a). This function is covered by a corresponding ISO standard for bank cards and/or POS device transactions that was in effect prior to July 10, 1997. Cigna adheres to each of these standards as they were in force at, or prior to, July 10, 1997."

Appx1479-1480 at ¶¶135 and 136.

Zatkovich, in referencing the above-listed paragraphs, and others, then expressed that there were no "enhancements" to the POS devices and "no configuration changes made to the POS devices" which "change the fundamental function of POS devices as required for use in the system defined by the asserted

claim functions." Appx1481 at ¶139. That is a specific reference to the unmodified POS, as that is the POS "required for use in the system by the asserted claim functions."

Specifically, the claim construction identifies only operations of a POS device that apply to functions for use in the system, (i.e., within the claim limitations of the system). POS devices function within the claim limitations performed for use in the system are described as a transaction processor "receiving" card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number. '608 Claim, ¶32.a. Thus, the function of the POS is to "send" the transaction messaging to the transaction processor (for forwarding to the processing hub). This function ("sending" or "transmitting") is covered by a corresponding ISO standard for bank cards and POS device transactions that was in effect prior to July 10, 1997. Cigna adheres to each of these standards as they were in force at, or prior to, July 10, 1997. Appx1478-1479 at ¶131, Appx1480 at ¶¶135-136. Zatkovich concludes as follows:

> As described in the preceding sections, ***any enhancements*** to POS devices after 1997, and ***no configuration changes*** made to POS devices for the retailer to support Cigna cards, ***change the fundamental function of POS devices as required for use in the system defined in the asserted claim limitations***.

Appx1481 at ¶139 (***emphases*** added). This testimony (and extensive additional testimony provided as part of the parties' MSJ briefing) supports Zatkovich's

opinion that the POS devices in Cigna's system were actually unmodified. *See, e.g*., Appx1478 at §10.4. In short, the receipt of a debit transaction using a BIN routed over an existing banking network utilizing standard ISO message formatting proves the POS device at the point-of-sale was "unmodified". That is the opinion and the evidence presented, which is at least sufficient to allow a jury to resolve this disputed issue of fact – i.e., that the POS devices were "unmodified" for use in Cigna's card processing system.

### B. Cigna's Arguments On AlexSam's Alleged Insufficient Evidence Fail.

Cigna contends that "Zatkovich ***admitted*** during deposition that he had no evidence to show whether any of the transactions involving the Cigna accused products actually occurred at unmodified point-of-sale devices." Red Brf. at 37-38 (***emphasis*** added). This is untrue, and it misstates Zatkovich's ***actual*** opinion that he, as an expert in POS devices and a person of ordinary skill in the art at the time of the invention, would not need to look at any of the POS devices used to initiate transactions using a Cigna accused product in order to reach his conclusion that they are, in fact, "unmodified." See generally Appx1413-1655. The reason for this is simple, and Cigna even points to this reasoning – "***All accused Cigna cards and transactions adhere to related POS standards.***" Red Brf. at 38 (quoting Appx1478-1479 (emphasis added)). It is these standards that confirm the "capture [of] card data…[transmission of] transaction messages from the POS device … [and receipt

of] response messages." Red Brf. at 39 (quoting Zatkovich at Appx1479). It is these very functions that are necessary for the POS device to perform an infringing transaction because the message from the POS to the intermediary, or processing hub, must contain standard messaging data, which it does here. Zatkovich makes this clear throughout his report. See Appx1413-1655. Moreover, Zatkovich's testimony – although unclear by virtue of the shifts in questioning by Cigna's counsel – was only that he, himself, had no ***personal*** knowledge of facts supporting his opinion, other than the evidence that he identified for Cigna's counsel. Appx1776 at 139:6-140:15.

Without any citation to the record, Cigna also claims that "standard card data" can be sent from "modified POS devices." Red Brf. at 43. AlexSam disagrees. In any event, Cigna offers no other examples, evidence, or explanation of how "standard card data" could be sent from a "modified POS device."

Cigna also mistakenly claims that AlexSam has "no evidence." Cigna argues that there is no proof of "unmodified," "because the Alegeus system ***expected to receive*** standardized card data." Red Brf. at 43-44 (***emphasis*** added). This is incorrect. Alegeus' corporate representative, Mr. Holmes, testified that standard data is ***actually received*** and that ***no modifications to the POS device is required to use Cigna's accused products***. Blue Brf. at 44-45 (citing Appx1716-1740 at 208:19-209:7). This testimony is consistent with the explanation of the Cigna/Alegeus

transactions provided by Zatkovich in his report. Appx1481 at ¶139. Contrary to Cigna's argument, Mr. Zatkovich is not "staking his opinion" only on what was "intended to be used at standard retail point-of-sale devices" (Red Brf. at 41) but on what was ***actually*** done. He clearly expressed the opinion that the "Defendants' Accused Product infringes the asserted claims of the '608 patent." Appx1484 at ¶145.

Then, turning to this Court's opinion in *IDT,* Cigna's Red Brief identified three points from AlexSam's Blue Brief related to whether the evidence in this case "differs from that found insufficient in *IDT*." Red Brf. at 40-41. Cigna recognizes first that AlexSam "utilized the opinion of a POS expert." Id. at 40. Cigna did not challenge Zatkovich's credentials or expertise in POS devices, so such should be deemed admitted. Second, Cigna points out that Zatkovich "reviewed the information obtained from Cigna's intermediary partner (Alegeus)." Id. This, too, is not challenged, and should, therefore, be deemed admitted.

Cigna then turns to the third point involving whether "the POS devices used to transmit card data to Alegeus were unmodified for such transmission." Id. Cigna claims that "it is here where AlexSam's argument fails as a matter of law." Id. at 41. But this argument is also incorrect because, consistent with the instructions from this Court in *IDT,* AlexSam presented a qualified POS expert, Mr. Zatkovich,, who "reviewed the information actually obtained from Cigna's intermediary partner

(Alegeus)," in order to determine that the POS devices used ISO standards to transmit card data to Alegeus, and were thus actually "unmodified." Blue Brf. at 42. Here, the District Court erroneously concluded that the evidence of infringement produced by AlexSam was not distinguishable from the evidence presented in *IDT*, as AlexSam demonstrated in its Blue Brief.

In fact, a close examination of the table of evidence presented by Cigna in its Red Brief highlights the differences between the evidence presented at trial in *IDT* and that offered at summary judgment, as is explained below.

### C. Cigna's Comparison of Zatkovich to the Holding in *IDT* Is Misleading and Inaccurate.

In its Red Brief, Cigna presents a table that purports to compare the "verbiage used by Zatkovich in his infringement report" with purportedly "similar evidence from AlexSam in *IDT*." Red Brf. at 38-39. However, as is explained below, the differences between the evidence are both material and ignored by Cigna.

First, Cigna compares (only a fraction of)[8] Zatkovich's opinion against Mr. Baker's testimony in *IDT* and deems them "similar" regarding the POS device's "reading" of "standardized" data. They are not. In fact, the quote from Zatkovich does not refer to "reading" of data. In any event, a significant difference is that Baker

[8] AlexSam submits that a fair comparison of Zatkovich and Baker should include all of Zatkovich's opinions, qualifications, and evidence.

testified that the "the terminals 'are the same as terminals that existed in July of 1997 from the standpoint that they are able to read a standard … card.'" As an initial matter, Baker's testimony does not relate to the requirement that the POS device be "unmodified," it relates to the ***separate requirement*** that the POS device be "of the type in use as of July 10, 1997 [the filing date of the '608 Patent]." Appx0022-0081 at 59 (Appx0080). Of equal importance, Baker's testimony related to what the device ***could*** do, whereas the Zatkovich excerpt related to what the POS devices ***did*** do. Specifically, Zatkovich confirmed that **"[a]ll accused Cigna cards and transactions *adhere to* related POS standards**" whereas Baker testified that the devices "**are *able to* read a standard … card….**" Red Br. at 38. (**Emphases** in original; ***emphases*** added.) In short, the evidence adduced by Mr. Zatkovich confirms what the Cigna system ***actually*** does, as opposed to Baker who theorized as to what IDT's system ***could*** do.

Second, the abbreviated presentation of Mr. Zatkovich's opinions in the second column fairs no better.[9] For example, Cigna's chart ignores that system "requirements" are directly related to infringement. Significantly, the *Datastream*

---

[9] Three observations are worth noting. First, the *IDT* Court did not find that the facts presented by the experts in that case were irrelevant, only that further support was required. Second, as demonstrated in its opening brief and re-emphasized below, AlexSam has provided that support. Third, Cigna's selection of limited phrases like "needs to modified" or "no modification is required" confuses, or outright misses, the context of the phrase and its relation to the purpose of the invention.

Court noted that "unmodified" was required by the examiner "to clarify that ***the systems claimed in the '608 patent did not require*** any hardware and/or software modifications to the existing standard retail POS devices." Appx0602-0621 at 9 (***emphasis*** added).

Likewise, in the prosecution history, the inventor emphasized what was required and not required with respect to his invention:

> …the present invention is specifically intended to be deployed over ***an existing banking system*** which, as is recognized by those of skill in the art, ***requires*** that cards deployed in such a system have associated with them an identifying number which include at least in part a ***bank identification number***…By utilizing the ubiquitous existing banking network, ***custom software is not necessary*** at the activating location where the card is either activated or utilized to gain information. Thus, existing point-of-sale devices known in the art for processing credit card and/or debit card transactions can be utilized without modification."
>
> …No additional programming is ***required*** in the device at the point of sale. This additional programming is ***required*** so that the point of sale device can reach network devices outside the banking network.

Appx 1153-1154 at 11-12 (***emphasis*** added). Since the invention is deployed over the existing banking network, what ***is required*** is a BIN, a transaction processor, and a processing hub; what ***is not required*** is custom software or additional programming. Similarly, by using verbiage in his report to point out what was and was not "required" or "necessary," Mr. Zatkovich was addressing important facts as provided in the prosecution history and as recognized by the *Datastream* court.

Finally, Cigna's third comparison also fails because the testimony of Baker and the quotes from Zatkovich do not relate to each other. Specifically, Baker testified that the POS devices used in the IDT system were "***the same as terminals that existed in July of '97 with respect to the ability to read a magnetic stripe and send that information*** on to the next step without any modifications made to that terminal in that respect." Red Brf. at 39 (***emphasis*** added). Notably, this testimony appears to relate, again, to the separate requirement related to the POS terminal being "of the type in use" as of the filing date of the '608 Patent, whereas Zatkovich's opinion includes factors that were not evaluated by Baker, including the use of ISO standards to ***capture*** (not merely "read") card data, ***transmit transaction messages***, and ***receive response messages***. Each of these factors, which were considered by Zatkovich but not by Baker, are directly relevant to Cigna's use of POS devices that had not been modified for its use in the infringing card system.

In sum, the differences between Mr. Zatkovich's infringement opinions in this case and those presented in *IDT* are both significant (in scope) and material (in nature). As such, the Court should decline the invitation to ignore the totality of Mr. Zatkovich's opinions.

## CONCLUSION

The District Court's MSJ Order should be vacated, and the case remanded.

Dated: December 5, 2022

Respectfully submitted,

*/s/ Jacqueline K. Burt*
Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, on behalf of Plaintiff-Appellant ALEXSAM, INC., I caused to be filed with the Clerk of the United States Court of Appeals for the Federal Circuit *via* the Court's CM/ECF system, which caused it to be served on all counsel of record, a copy of the ALEXSAM, INC.'S REPLY BRIEF.

Dated: December 5, 2022 Respectfully submitted,

*/s/ Jacqueline K. Burt*
Jacqueline K. Burt
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Ste. 4320
Atlanta, Georgia 30339
Email: jburt@hgdlawfirm.com
Telephone: (404) 996-0861
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(g) and 28.1(e)(3) of the Federal Rules of Appellate Procedure ("Fed. R. App. P.") and Rules 32(b)(3) and 28.1(c) of the Federal Circuit Rules ("Fed. Cir. R."), AlexSam certifies:

1. This document complies with the type-volume limitation because it contains 6,981 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).
2. This document complies with the typeface requirements of because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO in Times New Roman 14 point font.
3. This document complies with the limitations set forth in Fed. Cir. R. 28(d) because it contains no words (including numbers) marked as confidential.

Dated: December 5, 2022

Respectfully submitted,

*/s/ Jacqueline K. Burt*
Jacqueline K. Burt
*Attorney for Plaintiff-Appellant, AlexSam, Inc.*